THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN LARISON, PLAINTIFF IN ERROR.

Argued January 15, 1946—Decided April 1, 1946.

Before Justices PARKER and OLIPHANT.

For the plaintiff in error, *William A. Dolan* '(*Edward R. McGlynn,* on the brief).

For the state, *Saul N. Schechter,* Prosecutor of the Pleas.

The opinion of the court was delivered by

PARKER, J.  This is a writ of error to a conviction in the Warren County Court of Quarter Sessions of illegal conduct by a judge of election. In 1944 there was an election, among other things, for the office of township committeeman of Blairstown. There was a republican candidate and a democratic candidate. The substance of the charge was that Larison, the plaintiff in error, who was one of the Board of Elections and acted as judge of elections, had misread the ballots to such an extent that the democratic candidate was declared to be entitled to 328 votes and the republican candidate was entitled to 327. There was a recount, the result of which was a finding for the republican candidate of 367 votes and for the democratic candidate of only 291. The revised total seems to be three more than the original total, but no particular point is made on that score. There was an indictment by the Warren County grand jury charging criminal

conduct by Larison in announcing the result of the several individual ballots, in that he did read off the name of the democrat in numerous cases although the ballot was for the republican. The jury convicted, and the case is here both on strict bill of exceptions and specification of causes under the section formerly known as section 136 of the Criminal Procedure Act.

The first point is that the indictment is defective. This was raised below partly by motion to quash and by motion in arrest of judgment. However, we fail to see anything wrong with the indictment. It charges that the defendant while under the legal duty to read the ballots (of course as the ballots themselves read) did, in fact, knowingly and fraudulently announce that said ballots were cast for the democratic candidate whereas they were cast for the republican candidate. The indictment does not say how many ballots were so falsely read, but we discern no legal error on that score. Point I alleges that the indictment was defective, but we have no specification pointing out wherein it was defective, if at all.

The second point charges error in admitting into evidence an oath of the Election Board, or what purports to be an oath but which does not in fact appear as such. The copy before us is a photostat. It contains two separate oaths. The first oath is to faithfully and impartially discharge all the duties of a member of the Board of Election. This seems to be in due form. It is attested by a notary public and his seal seems to have been affixed. The second oath, however, which is an oath to support the Constitution of the United States and of New Jersey, and faithfully, &c., perform all the duties of the Board of Election, is signed by the four inspectors of election and there was a jurat which, however, is not subscribed. Evidently the notary public omitted to attend to that detail. Now the point seems to be that there is no statute authorizing the admission of this paper, and consequently that the common law rule applies; and under that rule the notary public should have been called. However, we are unable to perceive that this was particularly material. We consider that when a man has been elected or appointed

as an inspector of elections, and has undertaken, even although imperfectly, to qualify in that capacity and has sworn that he will faithfully perform all the duties of the office, but has inadequately undertaken to swear that he will support the Constitution of the United States and of the State of New Jersey, then if he undertakes those duties and does so corruptly and criminally, it would be unfortunate if a court were to hold that he may escape punishment because some notary public has failed to subscribe a second oath to support the Constitution of the United States and of New Jersey.

Point III is not very intelligible but seems to be in substance that there was error in admitting the ballots themselves at the trial. We can discern no legal merit in it.

The fourth point is the statutory point that the verdict is against the weight of evidence. This seems to be principally an attack on the testimony of a witness named Christian who testified at considerable length and in large part on matters that seem quite irrelevant to the present issue. It is enough for us at the present time to consider his story with regard to what happened at the counting of the votes, and particularly with regard to the incident where the defendant Larison said Cornwall was twelve ahead, and that "it is about time we drop a few;" and later there was some talk of $100 or $150 "if John changes a few of them around," and that after 200 votes had been properly read, defendant Larison began to count them out wrong.

We discern no legal error, and are clear that the verdict was not against the weight of evidence.

The judgment is affirmed.